UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON MELVIN RODGERS,<br><br>                                    Petitioner,<br><br>v.<br><br>JEFF MACOMBER, Secretary of the California Dep't of Corrections and Rehabilitation,<br><br>                                    Respondent. | Case No.:24cv0837-JLS (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.  On May 8, 2024, Milton Melvin Rodgers ("Rodgers" or "Petitioner") a state prisoner proceeding *pro se* commenced these habeas corpus proceedings pursuant to 28 U.S.C. § 2254. ECF No. 1 ("Pet."). Rodgers challenges his conviction in San Diego Superior Court Case No. SCD284166. See Pet.  Respondent answered on July 16, 2024.  ECF No. 6-1 ("Ans.").  Rodgers was given the opportunity to file a Traverse by August 15, 2024 but failed to do so.

This Court has considered the Petition, Answer, and all supporting documents filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Rodgers's Petition for Writ of Habeas Corpus be **DENIED**.

1

**FACTUAL BACKGROUND**

The following facts are taken from the California Court of Appeal's February 28, 2023 opinion. Lodgment 17. This Court presumes the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts are entitled to statutory presumption of correctness).

I.  Prosecution Case

On the evening of July 18, 2019, J.Q. was sitting with family members in an outside patio area of his home on Estrella Avenue near El Cajon Boulevard when he heard six rapidly-fired gunshots. He felt bullets fly past him, and heard one shot strike something metal on his house. J.Q. did not see the shooter. One shot struck the rear window of a nearby car in the same block.

S.S. and his wife were walking in the 4400 block of Estrella Avenue by a tire shop when S.S. saw Rodgers on his knees shooting a gun about six or seven times towards El Cajon Boulevard. Rodgers, who was wearing a white motorcycle helmet and a leather riding outfit, was with another man also wearing leather clothing. The men were caught on surveillance video, and at trial, S.S. identified the distinctive helmet Rodgers was holding when he was detained by police officers after another shooting days later.[1]

Officers later recovered shell casings from the area. An expert determined a recovered bullet was from a nine-millimeter caliber firearm. Lodgment 6 at 1-2.

The next morning, a man at his Reynard Street home heard five gunshots. One bullet went through his living room window and lodged about seven feet from where he was seated; another went into the stucco of a nearby wall.

About an hour later, Rodgers shot at and struck the vehicle of a woman driving on

---

[1] A few hours later, officers responded to a report of four or five shots fired in downtown San Diego by two men on a Harley-Davidson motorcycle, one of whom had a white motorcycle helmet with a blue stripe. Officers canvasing the area did not find any shell casings or bullets, nor did they find surveillance cameras that may have captured the incident. The shooting was the basis for count 9, on which the jury acquitted Rodgers.

Polk Avenue and Alabama Street in the North Park area of San Diego. The woman's vehicle had a bullet hole in its front right tire and another in its rear left passenger door.

About 30 minutes after the North Park vehicle shooting, a man at his 33rd Street apartment hearing a commotion looked outside, and saw Rodgers, wearing all black leather clothing and the same white motorcycle helmet, hiding behind a van and looking around as if to see if he was being watched. The man called police after he saw Rodgers haphazardly fire two shots down the alley then scale the gate of a nearby apartment.

Ballistics testing revealed that all shots fired by Rodgers that morning were from the same gun, a .38-caliber special or .380-caliber Magnum revolver.

During the evening of July 24, 2019, a man was in his Amherst Street home when he heard a gunshot. He immediately ran outside and saw Rodgers, wearing gloves and holding the white motorcycle helmet, running down an adjacent alleyway then cutting through a church parking lot. Another man in the neighborhood heard the gunshot and within a couple of minutes saw Rodgers appear from the church property cradling the helmet. Rodgers was intermittently walking and sprinting and looking behind him.

Officers responded to a report of shots fired, and one of the officers at the scene was given a description of an adult male wearing a grey long-sleeved shirt and black pants carrying a motorcycle helmet. The officer drove around the area and a few blocks away discovered Rodgers matching the description. As soon as Rodgers made eye contact with the officers, he began running away. Eventually the officers caught up with and apprehended Rodgers, who was wearing a fanny pack containing four expended shell casings that smelled like burnt gun powder. The fanny pack also smelled like discharged gunpowder. Rodgers had a bindle of methamphetamine in his shirt pocket. He showed signs of being under the influence of methamphetamine.

Police recovered a .380-caliber semiautomatic firearm on the side of a retaining wall in the area where Rodgers had been running down the alley by the other side of the wall. The gun smelled of burnt gunpowder. The unexpended cartridges in the firearm matched the expended cartridges found in Rodger's fanny pack, and an expert determined those expended cartridges had been fired from that weapon. A criminalist determined the gun had DNA from Rodgers and another man on it, with Rodgers being the 95 percent contributor.

At trial, during which Rodgers represented himself, the parties stipulated that Rodgers was previously convicted of felony assault with a deadly weapon.

II.  Defense Case

Rodgers's mother testified that on July 18 and July 19, 2019, Rodgers was working as her caregiver; he stayed overnight on the 18th and did not leave the house on the 19th.

Rodgers testified in his defense.  He claimed the motorcycle helmet he was found carrying on July 24, 2019, did not belong to him, but that he had borrowed it.  He testified that on that day, he was near 7000 Amherst Street when he was surrounded by a crowd of six or seven people and robbed at gunpoint.  After the gunman discharged his gun in the air, Rodgers sprayed the individuals with pepper spray, disbursing them.  According to Rodgers, the gunman left behind the shell cases, which Rodgers picked up.  He eventually tried to flag down police officers but ran off to see where the robbery suspect went.  Rodgers later filed an online police report of the matter.

III.  Rebuttal

Following Rodgers's July 24, 2019 arrest, a detective interviewed him for almost an hour about the shootings of that day as well as the other shootings that had occurred a week earlier.  During that interview, Rodgers never told the detective that he had flagged down police officers because he was chasing a robber.

Lodgment No. 17 at 3-7.

## PROCEDURAL BACKGROUND

On July 7, 2023, a jury found Rodgers guilty of three counts of discharging a firearm in a grossly negligent manner, a violation of California Penal Code (Penal Code) § 246.3(a) (counts one, five, and ten), three counts of possession of a firearm by a felon, a violation of Penal Code § 29800(a)(1) (counts two, six, and eleven), two counts of possession of ammunition by a prohibited person, a violation of Penal Code § 30305(a)(1) (counts three and seven), one count of possession of a firearm by a possessor of a controlled substance, a violation of Health and Safety Code § 11370.1(a) (count four), and three counts of shooting at an inhabited occupied dwelling house, a violation of Penal Code § 246 (counts eight, twelve, and thirteen). The jury

also found that the Rodgers personally used a deadly weapon, a firearm, within the meaning of Penal Code § 1192.7(c)(23) in committing counts one, five, eight, ten, twelve, and thirteen. Lodgment No. 2 at 64-76. Rodgers was sentenced to twelve years and four months in prison. Id. at 6-9.

Rodgers appealed his conviction to the California Court of Appeal, Fourth Appellate District. Lodgment No. 14. The Court of Appeal remanded the matter to the trial court for resentencing but upheld his conviction in a written, unpublished opinion. Lodgment No. 17. Rodgers then filed a petition for review in the California Supreme Court, which denied the petition without citation of authority. Lodgment Nos. 18, 19. On December 1, 2023, the trial court resentenced Rodgers to a prison term of ten years and four months, and reduced some of his fines and fees. Lodgment No. 20. Rodgers did not seek collateral review in state court.

## DISCUSSION

In his Petition, Rodgers contends that his Fourteenth Amendment right to due process was violated when the prosecutor elicited testimony regarding his prior conviction for being a felon in possession of a firearm which the trial court had excluded in pretrial proceedings. Pet. at 6-8. He also alleges the trial court erroneously admitted evidence that he had been previously convicted for being a felon in possession of a firearm. Id.

Respondent argues the prosecutor did not improperly elicit testimony regarding Rodgers's conviction for being a felon in possession of a firearm, the trial court did not err in admitting the evidence, and the appellate court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Ans. at 12-21.

A. Standard of Review

Rodger's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at

5

1   the state court proceeding. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 8 (2002).

2       A federal court is not called upon to decide whether it agrees with the state court's
3   determination; rather, the court applies an extraordinarily deferential review, inquiring only
4   whether the state court's decision was objectively unreasonable. See Yarborough v. Gentry, 540
5   U.S. 1, 4 (2003); Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).

6       A court may grant relief under the "contrary to" clause if the state court applied a rule
7   different from the governing law set forth in Supreme Court cases, or if it decided a case
8   differently than the Supreme Court on a set of materially indistinguishable facts. See Bell v.
9   Cone, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable
10  application" clause if the state court correctly identified the governing legal principle from
11  Supreme Court decisions but unreasonably applied those decisions to the facts of a particular
12  case. Id. Additionally, the "unreasonable application" clause requires that the state court
13  decision be more than incorrect or erroneous; to warrant habeas relief, the state court's
14  application of clearly established federal law must be "objectively unreasonable." See Lockyer
15  v. Andrade, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply
16  because that court concludes in its independent judgment that the relevant state-court decision
17  applied clearly established federal law erroneously or incorrectly. Rather, that application must
18  also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). "A state court's
19  determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded
20  jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter,
21  562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

22      Where there is no reasoned decision from the state's highest court, the Court "looks
23  through" to the last reasoned state court decision and presumes it provides the basis for the
24  higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 805-06 (1991).
25  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas
26  courts must conduct an independent review of the record to determine whether the state court's
27  decision is contrary to, or an unreasonable application of, clearly established Supreme Court
28  law. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need

not cite Supreme Court precedent when resolving a habeas corpus claim. See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

### B. Prosecutorial Misconduct

Before Rodgers's trial began, he filed a motion in limine seeking to exclude his prior conviction for being a felon in possession of a firearm. Lodgment No. 1 at 91-94. The trial court granted Rodgers's motion and ruled that his prior conviction for felon in possession of a firearm was not admissible unless Rodgers's opened the door to the testimony. Lodgment 6 at 36. The trial court cautioned Rodgers that he could "open the door" to the admission of the prior conviction for being a felon in possession of a firearm if he testified by claiming, for example, he "never shot a gun in [his] life." Id. The trial court warned Rodgers that the prosecutor may want to "bait" Rodgers into making such a statement and informed the prosecutor that he should not do so and should ask for a sidebar if he believed that Rodgers "opened the door." Id.

Rodgers testified at trial and during the cross-examination the prosecutor asked if the gun found at the scene of the July 24, 2019 shooting belonged to Rodgers. Lodgment 10 at 183. Rodgers testified that gun was the one used to rob him and then volunteered "I don't own a gun." Id. In response, the prosecutor asked Rodgers whether he had ever possessed a gun. Id. Rodgers objected and argued this line of questioning violated the trial court's in limine order. Id. The trial court ruled that it was not a violation and explained to Rodgers that he had been told that "if you opened the door to the question," he would have to answer the question. Id. at 184. The trial court instructed Rodgers to answer this question and Rodgers refused to do so. Id. Rodgers objected again and the trial court overruled his objection. Id. at 185. After refusing again to answer the question, the trial court asked Rodgers if he wanted the court to "instruct the jury on this." Id. After Rodgers continued to refuse to provide an answer, the trial court instructed the jury that on July 3, 2012, Rodgers had been convicted of being a felon in

possession of a firearm in violation of California Penal Code § 29800(A)(1). Id. at 187.

Rodgers contends the prosecutor committed an act of misconduct when he "intentionally elicit[ed] inadmissible testimony" in order to open the door to admitting into evidence Rodgers's prior conviction. Pet. at 7. Respondent contends that Rodgers's argument that the prosecutor committed misconduct in violation of the trial court's in limine ruling necessarily fails because the appellate court found that there was no violation of the trial court's in limine ruling excluding evidence of his prior conviction and that determination is binding on this Court. Ans. at 10-11. In addition, Respondent contends that Rodgers's claims of error are not cognizable because they rest on the trial court's evidentiary ruling, there is no due process violation because his prior conviction was admissible and relevant to his credibility as a witness, there was no prosecutorial error, and any error was harmless because of the "overwhelming evidence of his guilt." Ans. at 6.

Rodgers presented this claim in the petition for review he filed in the California Supreme Court. The California Supreme Court denied the petition for review without citation of authority. Lodgment No. 19. This Court applies a presumption that the silent denial by the state supreme court adopted the reasoning of the appellate court. Ylst, 501 U.S. at 803-04; see also Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (federal habeas courts look to the last reasoned decision of a state court which adjudicated a federal claim on the merits).

The state court of appeal analyzed this claim as follows:

> A prosecutor may engage in misconduct by intentionally eliciting inadmissible testimony or evidence. (People v. Molano (2019) 7 Cal.5th 620, 675.) But such a claim requires proof that the prosecutor acted deliberately or intentionally; there is no misconduct where the prosecutor could not have anticipated a witness's testimony. (Ibid.; see People v. Valdez (2004) 32 Cal.4th 73, 125.)
>
> Here, the prosecutor did not directly ask Rodgers whether he had been convicted of being a felon in possession of a firearm; the questions were directed at whether the gun found after the July 24, 2019 shootings belonged to Rodgers. Rodgers answered the question by claiming the gun belonged to the person that robbed him, then volunteered, "I don't own a gun." It was permissible for the prosecutor to follow up by asking Rodgers whether he had ever owned or possessed guns, as

> Rodgers's testimony tended to suggest he was unfamiliar with firearms because he had never owned them. Nor can we say the prosecutor's question violated the court's in limine ruling or its admonition to avoid "bait[ing]" Rodgers to open the door to impeachment evidence. The court's admonition pertained to T.W.'s proffered testimony, not to the evidence in general or the excluded firearm possession conviction.
>
> Even if we were to assume the prosecutor somehow committed misconduct in his attempt to elicit Rodgers's testimony on whether he had ever possessed a firearm, we would not be persuaded to reverse. "Under the federal Constitution, a prosecutor commits reversible misconduct only if the conduct infects the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' [Citation.] By contrast, our state law requires reversal when a prosecutor uses 'deceptive or reprehensible methods to persuade either the court or the jury' [citation] and ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." ' " (People v. Davis (2009) 46 Cal.4th 539, 612; see also People v. Hoyt (2020) 8 Cal.5th 892, 942-943.) We conclude … that the admission of Rodgers's 2012 felon-in-possession-of-a-firearm conviction did not prejudice him.

Lodgment 17 at 11-12.

Under clearly established federal law, in order to find a prosecutor's actions amount to misconduct, "[i]t is not enough that the prosecutor's remarks [or actions] were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Rather, a prosecutor commits misconduct when his or her actions "'so infect . . . the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power." Id. (quoting Donnelly, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillipps, 455 U.S. 209, 219 (1982). "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer v. Miller, 483 U.S 756, 765 (1987) (citation omitted).

Rodgers argues that the prosecution elicited testimony from him in violation of the in limine order. The court of appeals noted that the trial court, during pretrial motions, excluded evidence that Rodgers had been previously convicted of being a felon in possession of a firearm. Lodgment 17 at 7. Rodgers objected during his trial when the prosecutor asked him if he had ever owned a gun after Rodgers voluntarily testified that "I don't own a gun." Id. at 9. The appellate court found that it was permissible for the prosecutor to follow up this line of questioning because Rodgers's "testimony tended to suggest he was unfamiliar with firearms because he had never owned them." Id. at 12. The appellate court concluded that this line of questioning neither "violated the court's in limine ruling [nor] its admonition to avoid 'bait[ing]' Rodgers to open the door to impeachment evidence." Lodgment 17 at 12.

The Ninth Circuit has noted that "a prosecutor's clear violation of a state trial court's in limine ruling constitutes prosecutorial misconduct for the purposes of habeas relief." Armenta v. Kernan, 735 Fed.Appx. 255, 258 (9th Cir. 2018) (citation omitted). Rodgers fails to show that the prosecutor violated the court's in limine ruling and therefore, is unable to show any misconduct. Moreover, the Court's review of the trial record and appellate court's analysis confirms that the prosecutor did not violate the trial judge's in limine order and the reasoning of the appellate court was not unreasonable.

The trial court ruled on the motion in limine to exclude Rodgers's prior conviction instructing the prosecutor, "you may not introduce this evidence in your case in chief" but if Rodgers "opens the door to that evidence, you may alert me sidebar saying, 'Judge, I think I should be allowed to use it now'" and the trial court would "make that decision at the time." Lodgment No. 6 at 36. The trial court gave Rodgers a hypothetical to illustrate how he could "open the door" to having this prior conviction for being a felon in possession of weapon be admitted by testifying "I never shot a gun in my life." Id. The trial court explained that a response like this one would allow the prosecutor to ask a witness if they had ever seen Rodgers shoot a gun and that could lead to the admissibility of evidence that Rodgers had been previously convicted of being a felon in possession of a weapon. Id.

During the trial, the prosecutor cross-examined Rodgers and asked him if the gun that

10

24CV0837-JLS (BLM)

was found at the scene belonged to him and Rodgers testified "[t]hat was the gun I was robbed with" and then volunteered "I don't own a gun." Lodgment No. 10 at 183. The prosecutor then asked Rodgers "[y]ou've never owned guns?" Id. After Rodgers objected, the trial court ruled that it was not a violation of the trial court's in limine ruling and ordered Rodgers to answer the question. Id.

Here, the Court agrees that the prosecutor did not violate the trial court's in limine ruling. First, the prosecutor did not "bait" Rodgers because the question posed by the prosecutor was proper and unrelated to the in limine ruling. The problem arose because after answering the prosecutor's question, Rodgers volunteered that he did not own a gun and that voluntary testimony was not in response to the question that was asked. Second, the prosecutor did not ask Rodgers about his conviction for being a felon in possession of a firearm and did not directly ask Rodgers whether he had been previously convicted of possessing a firearm. Rather, the prosecutor asked whether he had "ever possessed guns," which was a proper follow up question to Rodgers's testimony that he did not own a gun. Rodgers refused to answer the question and refused to comply with the court's ruling denying Rodgers's objection and ordering him to answer the question. Lodgment No. 10 at 184-187. It was Rodgers's refusal to comply with the trial court's ruling that resulted in the admission of his prior conviction for being a felon in possession of a weapon. Id. at 187. As such, there was no prosecutorial misconduct.

In Armenta, the Ninth Circuit held that where a trial court found there was no violation of the in limine ruling, a prosecutorial misconduct claim would require the Ninth Circuit to "interpret the trial court's evidentiary order, and in doing so to make our own findings on state issues of admissible evidence" and "[h]abeas relief may not be granted on this basis." Armenta, 735 Fed.Appx. at 258 (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to examine state-court determinations of state-law questions."); Leinweber v. Tilton, 490 Fed.Appx. 54, 57 (9th Cir. 2012) (citing Estelle, 502 U.S. at 63) ("[Petitioner] complains of instances in which the state trial court admitted prior bad act evidence over defense counsel's objection.... This contention does not address prosecutorial misconduct [for purposes of habeas relief] but rather goes to the state trial court's

admission of that evidence, an issue of state law."). Here, like Armenta, the trial court found no violation of the court's in limine ruling and if this Court were to grant the relief sought by Rodgers, it would require this Court to overrule the trial court's evidentiary ruling.

Accordingly, the appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Yarborough, 540 U.S. at 4. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). The Court therefore **RECOMMENDS** that Rodgers's Petition be **DENIED** on this ground.

### C. Admission of Prior Conviction

Rodgers contends that the trial court erred when it allowed evidence of his prior conviction for being a felon in possession of a firearm to be admitted for impeachment purposes. Pet. at 8-9. To the extent that Rodgers is claiming that the evidence was wrongly admitted under state law, this claim is not cognizable for federal habeas review unless federal constitutional rights are affected. Estelle, 502 at 67-68. An improper evidentiary ruling can violate due process, which warrants habeas relief, but only if it renders a trial fundamentally unfair. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing Estelle, 502 U.S. at 67-68).

Rodgers also contends that the admission of this evidence violated his Fifth and Fourteenth Amendment due process rights because it "made the jury believe the trial court did not think very highly of Petitioner or [his] credibility." Pet. at 8. In response, Respondent argues that there was no due process violation because Rodgers put his credibility at issue when he chose to testify on his own behalf and this decision justified the admission of the conviction because there is a "rational and constitutionally permissible inference to be drawn from the prior conviction evidence, namely, that he was not credible." Ans. at 15.

The court of appeal found that the trial court did not abuse its discretion in admitting Rodger's prior conviction for being a felon in possession of a weapon even though the trial court did not express its reasoning for concluding that Rodger's answers opened the door to this evidence. Lodgment 17 at 14-15. The court of appeal explained that the trial court "could have reasonably concluded that Rodger's statement that he never owned firearms tended to suggest

to the jury that he was unfamiliar with them, thereby permitting questioning on whether he had ever possessed a firearm." Id. at 15. As a result, it was reasonable to include this evidence when Rodgers refused to answer because "the court should not permit a defendant to testify with a 'false aura of veracity.'" Id. (citing People v. Hinton, 37 Cal.4th 839, 888 (2006)).

The court of appeal then proceeded to the prejudice analysis, finding that under the Watson state law prejudice standard, they saw "no reasonable probability the outcome would have been different" if the jury hypothetically had not be instructed that Rodgers had a prior conviction for being a felon in possession of a weapon. Id. at 17 (citing People v. Watson, 46 Cal.2d 818, 836 (1956)). The appellate court went on to explain that the arguments raised by Rodgers in his state court petition did "not compel us to assess prejudice under the federal Chapman standard." Id. at 18.

The court of appeal analyzed Rodgers's federal claims as follows:

> Rodgers claims the error violated his federal Fifth and Fourteenth Amendment constitutional rights to due process and is reversable under the more exacting harmless beyond a reasonable doubt standard of Chapman v. California (1967) 386 U.S. 18 (Chapman). He relies on a federal Fifth Circuit Court of Appeal case that does not bind us (People v. Williams (2013) 56 Cal.4th 630, 668) and People v. Garceau (1993) 6 Cal.4th 140, disapproved on another ground in People v. Yeoman (2003) 31 Cal.4th 93, 117-118.) We are not persuaded. Garceau involved evidence of uncharged offenses admitted pursuant to a jury instruction allowing the jury to consider the evidence " 'for any purpose, including but not limited to' " the defendant's " 'character or any trait of his character.' " (Id. at p. 186, italics omitted.) The court acknowledged the "potentially devastating impact" of such evidence, but held its admission was harmless beyond a reasonable doubt given the trial evidence. (Id. at p. 187.) The court's ruling in this case bears no resemblance to the court's error in Garceau. Rodgers's argument does not compel us to assess prejudice under the federal Chapman standard.

Id. at 17-18.

///

///

///

There is no clearly established Supreme Court law that "addresses whether the admission of a defendant's criminal history or prior bad acts would violate due process" and the "Supreme Court has expressly reserved the question of whether using evidence of a defendant's past crimes to show he has a propensity for criminal activity could ever violate due process." Kipp v. Davis, 971 F.3d 939, 951-52, n. 8 (9th Cir. 2020) (citing Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006); Estelle, 502 U.S. at 75, n. 5 (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). As the Ninth Circuit has observed:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair (citation omitted), it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an unreasonable application."

Holley, 568 F.3d at 1101 (citing Williams v. Taylor, 529 U.S. 362, 375 (2000)).

Ninth Circuit precedent "squarely forecloses" the claim that admission of propensity evidence violates due process. Mejia v. Garcia, 534 F.3d 1036 1046 (9th Cir. 2008); see also Chavarria v. Hamlet, 472 Fed.Appx. 749, 750 (9th Cir. 2012); Greel v. Martel, 472 Fed.Appx. 502, 504 (9th Cir. 2012). Because there is no clearly established Supreme Court law holding the admission of propensity evidence violates due process, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Carey v. Musladin, 549 U.S. 70, 77 (2006); Tapia-Felix v. Ndoh, 2020 WL 3533551, at *7 (N.D. Cal. Jan. 21, 2020) ("There is [] no clearly established Supreme Court law prohibiting the admission of propensity evidence violates due process.")

Aside from the issue of clearly established federal law, "[a] habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005). Again, "[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the

trial fundamentally unfair in violation of due process.' " Holley, 568 F.3d at 1101. "Only if there are no permissible inferences the jury may draw from evidence can its admission violate due process." Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003).

The court of appeal specifically found that "[b]y taking the stand and offering an alibi defense denying guilt for the offenses, Rodgers put his credibility squarely at issue, and as a result exposed himself to being impeached with his conviction for being a felon in possession of a firearm." Lodgment 17 at 15-16. Moreau v. Spearman, 2020 WL 1547440, at * 8 (citing Boyde, 404 F.3d at 1174.) ("[Petitioner] put his credibility at issue by choosing to testify," and there was a "rational and constitutionally permissible inference to be drawn from the prior conviction evidence, namely that petitioner was not credible."). As discussed above, evidence of Rodgers's prior conviction involving the possession of a weapon was clearly relevant to the jury's decision as to the credibility of Rodgers's alibi that was part of his testimony.

For the reasons set forth above, the appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Yarborough, 540 U.S. at 4. Nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). The Court therefore **RECOMMENDS** that Rodgers's Petition be **DENIED** on this ground.

D. Harmless Error

Even assuming the prosecutor committed misconduct or the trial court's ruling allowing the admission of the prior conviction for being a felon in possession of a firearm violated due process, relief is only available if Rodgers can establish that the misconduct had a "substantial and injurious effect or influence determining the jury's verdict." Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test of Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993) to prosecutorial misconduct claims). In this case, during closing argument, the prosecutor referenced that Rodgers was a felon only one time and did not identify the nature of that conviction. Lodgment No. 11 at 84. The Court notes that Rodgers stipulated to the admission of his prior conviction for assault with a deadly weapon, so the jury already knew Rodgers was a felon who had possessed and used a dangerous weapon. As such, the admission

of Rodgers's prior conviction for being a felon in possession of a firearm would not have had a substantial and injurious effect on the jury. Lodgment No. 8 at 28.

In addition, even if there was error in admitting the prior conviction for being a felon in possession of a firearm, it was not probable that if this error had not occurred Rodgers would have received a more favorable result from the jury in light of the overwhelming evidence of his guilt. Allen v. Woodford, 395 F.3d 979, 992 (9th Cir.2005), cert. denied, 546 U.S. 858 (2005) ("[T]o the extent that any claim of error ... might be meritorious, we would reject that error as harmless because the evidence of [petitioner's] guilt is overwhelming.")  The trial evidence included evidence that Rodgers's DNA was a ninety-five (95) percent contributor to the DNA found on the weapon that was used in four of the shootings. Lodgment 8 at 180. The evidence also established that the expended cartridges found at the scene of four of the shootings were fired from the weapon that had Rodgers's DNA. Id. at 128; Lodgment 10 at 63.

For these reasons, the Court finds Rodgers has failed to establish that the admission of the prior conviction for being a felon in possession of a weapon had a substantial or injurious impact on the jury's verdict. Brecht, 507 U.S. at 637-38. Therefore, even if the Court were to find that there was a constitutional violation with regard to the admission of the prior conviction for being a felon in possession of a weapon, the Court finds this error was harmless.

## CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **December 20, 2024**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 10, 2025**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: 11/21/2024

Hon. Barbara L. Major
United States Magistrate Judge